FILED IN OPEN COURT
8.30.12
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 3:12-cr-19(S2)-J-25MCR |
| | : | |
| RUEL ALEXANDER BROWN | : | |

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, Ruel Alexander Brown, and the attorney for the defendant, A. Russell Smith, Esquire, mutually agree as follows:

A. **Particularized Terms**

1. **Count Pleading To**

The defendant shall enter a plea of guilty to Count Eight of the Second Superseding Indictment. Count Eight charges the defendant with sex trafficking by means of force, threats of force, fraud and coercion of an individual whose initials are A. T., in violation of Title 18, United States Code, Sections 1591 and 2.

2. **Minimum and Maximum Penalties**

AB3 EIGHT RB

Count ~~One~~ is punishable by a mandatory minimum term of imprisonment of fifteen (15) years up to life, a fine of $250,000, a term of supervised release of at least five (5) years up to life, and a special assessment of $100, said special assessment to be due on the date of sentencing. If the defendant should violate the terms of supervised release upon release from incarceration, the defendant could receive an additional term of imprisonment of up to five (5) years, unless the violation is a criminal offense under chapter 109A, 110 or 117 of Title 18, or sections 1201 or 1591 of Title 18, and in that case the defendant shall receive an additional term of imprisonment of not less than five (5) years up to life. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. **Elements of the Offense**

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Eight are:

First: The Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person, that is a female whose initials are A. T. and who also used an alias name with the initials S.C., as charged in the Second Superseding Indictment;

Second: The Defendant did so knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act; and

Third: That the Defendant's acts were in or affected interstate commerce.

4. **Counts Dismissed**

At the time of sentencing, the remaining counts against the defendant, Counts One through Seven and Counts Nine through Thirteen, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement and related to an escape attempt of an individual named Larry Joe Marcell, a United States pre-trial detainee, on July 10, 2012. The United States Attorney's Office for the Middle District of Florida agrees to make this paragraph known to the United States Attorney's Office for the Southern District of Georgia.

6. **Concurrent Sentence**

The United States shall not oppose any request by the defendant that the Court impose any sentence in this case to run concurrently with any sentence the Court may impose in that certain case styled United States v. Ruel Brown, Case No. 6:12-cr-170-Orl-31GJK, now pending in the United States District Court, Middle District of Florida, Orlando Division. The defendant understands that any such request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from this plea.

7. **Mandatory Restitution to Victim of Offense of Conviction and Agreed Restitution to Victim's of Other Counts**

Pursuant to 18 U.S.C. § 1593, defendant agrees to make full restitution, if any, to A.T. Also, pursuant to 18 U.S.C. § 3663(a)(3), and as consideration for the agreements of the United States set forth in this agreement, including the agreement to drop the remaining counts against defendant, defendant agrees to make full restitution, if any, to each of the other victims identified in the Second Superseding indictment. Upon request, the United States Attorney's Office shall provide each victim's full name and address to the United States Probation Office to facilitate payment of any restitution ordered by the Court.

8. **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United

States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books,

papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. **Use of Information - Section 1B1.8**

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of

defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11. **Cooperation - Responsibilities of Parties**

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10. **Sex Offender Registration and Notification**

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands

that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

11. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1594, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following:

a. Any property, real of personal, used or intended to be used to commit or to facilitate the commission of the offense, 18 U.S.C. § 1591; and

b. Any property, real or personal, constituting of derived from, any proceeds obtained, directly or indirectly, as a result of the offense, 18 U.S.C. § 1591.

The defendant agrees and consents to the forfeiture of these assets, if any, pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property, if any, sought by the government. Pursuant to the provisions of Rule

32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite *nexus* between the property subject to forfeiture, if any, and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4)(A), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interest in the properties described above, if any, and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above, if any, wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above, if any. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

MDH ARS RB * See attached ¶ 12

B. **Standard Terms and Conditions**

1. **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996);

and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any

recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding

any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. **Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has

the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

***ATTACHMENT TO PLEA AGREEMENT**

12. **Low End Recommendation**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials LB

10. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 27 day of AUGUST, 2012.

ROBERT E. O'NEILL
United States Attorney

RUEL ALEXANDER BROWN
Defendant

By:

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

A. RUSSELL SMITH, Esq.
Attorney for Defendant

JULIE H. SAVELL
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:12-cr-19(S2)-J-25MCR

RUEL ALEXANDER BROWN

## PERSONALIZATION OF ELEMENTS

1. Do you admit that between in or about March 2010, through on or about November 4, 2011, at locations including Jacksonville, Daytona Beach, and Orlando in the Middle District of Florida, and elsewhere, you knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person, that is a female whose initials are A. T. and who also used an alias name with the initials S.C., as charged in Count Eight of the Second Superseding Indictment?

2. Do you admit you did so knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause A.T. to engage in a commercial sex act?

3. Do you admit your acts were in or affected interstate commerce?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:12-cr-19(S2)-J-25MCR

RUEL ALEXANDER BROWN

---

## FACTUAL BASIS

### A. A General Overview of Ruel Brown and His Sex Trafficking Activities

Since at least October 2002, the defendant, Ruel Alexander Brown "Brown") has engaged in commercial sex trafficking (commonly known as "pimping") throughout the United States. In an autobiography of his exploits titled "The Game" (a name synonymous with prostitution), Brown describes himself as a "super star pimp." Brown goes by the alias "King David," and the women who have worked for him refer to him either as "King David" or "K.D." Since 2002 to the date of his arrest, the number of women working for Brown at any given time varied.

Although the women who have worked for Brown throughout the years are by no means identical, some women who worked for Brown had either already engaged in prostitution before meeting Brown or had worked in adult entertainment establishments before meeting him. Some of these women began working for Brown when they were minors (although these women usually misrepresented their age to Brown upon their initial meeting).

Defendant's Initials ___

Brown typically drove luxury vehicles and presented an image of wealth and success. Upon meeting new victims, he would often promise these women a better life including security, stability, travel and great financial reward. In reality, the women would engage in commercial sex acts with customers, deliver all of the funds they were paid to Brown, and never see the money.

Brown transported the women who worked for him to various cities and states throughout the United States. Brown and the women would stay in hotels or rented residential dwellings, and the women would engage in commercial sex acts to earn money for Brown. Sometimes, the women would walk in areas known as a "track," which was a known, high prostitution area, and they would solicit clients from the roadways. More often, Brown would cause the women to be advertised on the internet, and the women would engage in commercial sex acts that were either in-calls (in which customers came to the women) or out-calls (in which the women went to customers).

After recruiting the women and securing their work for him, Brown eventually would resort to force and threats of force to cause the women to engage in commercial sex acts. The force took many forms and ranged from slight to severe, with some episodes resulting in professional medical attention for the women.

**B. The Victim Identified as A.T.**

A female with the initials A.T. is the victim identified in Count Eight of the Second Superseding Indictment. Her story is not atypical from other women who have worked for Brown.

A.T. presently is a twenty-five year old female. She holds a high school education and attended some college. In the past, she has also used an alias name and a false identification that Brown gave her from the state of Oregon under the name with the initials S.C. A.T. currently has a tattoo on her back that reads, "Property of King David."

A.T. first met Brown in Columbia, South Carolina, the city where Brown resides, in approximately March 2010. A.T. had recently gotten out of South Carolina prison after serving a youthful offender sentence for her role in a robbery. A.T. was walking down the street, and Brown, who was driving a black BMW motor vehicle, stopped and started speaking with A.T. During the conversation, Brown advised A.T. that he was a pimp and that she could have a better life. Among other things, he advised her that she could make a lot of money, would want for nothing, and could have nicer things. He told her that she would have both a house and a car within a month if she started working for him.

A.T. agreed to go with Brown, and he initially took her to a club in South Carolina where Shannon Burney, another female who worked for Brown, met the two. Burney had been with Brown since 2002. She assisted Brown in recruiting

A.T. to work for Brown. Burney helped Brown explain that there would be a lot of travel, there was lots of money to be made, and A.T. could lead a much nicer life.

After meeting for some time in the club, Brown took A.T. to a local hotel room where she was introduced to some of the other women working for Brown, including a juvenile whose name begins with the initials B.L. and a woman whose name begins with the initials T.C. A.T. agreed to work for Brown that night.

As detailed below, over the next year and a half, Brown transported A.T. all over the United States to many locations where A.T. performed commercial sex acts for Brown. The promise of a better life and financial rewards never materialized, and eventually, Brown began using force and threats of force as a means of causing A.T. to continue performing commercial sex acts for him.

### C. Brown's Sex Trafficking of A.T. and its Affect Upon Interstate Commerce

Once A.T. began working for Brown in approximately March 2010, Brown transported A.T. (and other women) throughout the United States where she and the other women would engage in commercial sex acts for Brown. Brown has transported A.T. and others to a number of locations within the United States, including Jacksonville, Daytona Beach, and Orlando in the Middle District of Florida, the Northern District of Florida, the Southern District of Florida, Alabama, Delaware, the District of Columbia, Georgia, Indiana, Kentucky, Louisiana, Massachusetts, Maryland, Mississippi, New Jersey, North Carolina, South Carolina, Tennessee, Texas, and Virginia. In each location, Brown and the women, including A.T., would

obtain a hotel room in a hotel that caters to interstate travelers. Example hotels include hotel chains like La Quinta Inns, Red Roof Inns, Holiday Inns, and a number of others.

Usually, when the group came to a new city, Brown would cause internet ads to be placed for the women on internet sites like Craigslist and a site called Backpage.com. This site is maintained by a company headquartered in Arizona, and ads placed on this site are physically stored on computer servers in the state of Arizona. Brown often would pay for these ads using a credit card known as a Rush Card. Hundreds of these ads would be introduced at trial, including many placed under the name of either Brown or Shannon Burney. Each of these ads affected interstate commerce.

Most of the ads for A.T. used stock internet photos of other women, identified A.T. as "Lexi," and were placed under the category of "adult entertainment>escorts." Ads typically resulted in either in-calls (in which the customer came to A.T.) or out-calls (in which A.T. went to the customers). In some locations, though, the internet advertising was not as productive due to the volume of ads placed by other women. In these locations, Brown would direct A.T. and the other women to work in a location within the city known as a "track" – an area in which women engaging in prostitution would walk around and solicit customers from the roadside.

Orlando, Florida is illustrative of a city where internet advertising was not as productive as walking. Although Brown caused A.T. to be advertised on Backpage.com in Orlando, many of A.T.'s commercial sex acts in this city resulted from A.T. working by walking along Orange Blossom Trail, an area of Orlando known for a high level of prostitution. A.T. and B.L. were arrested by undercover Orlando police on September 11, 2011, while they were working for Brown in this location.

Brown typically gave A.T. a nightly quota of $1,000, and A.T. typically charged $100 for 15 minutes of sexual activity, $150 for 30 minutes of sexual activity, and $200 for an hour of sexual activity.

A.T. worked for Brown in this fashion from March 2010 until November 4, 2011. During this period, A.T. would periodically contact her mother to advise of her plight, but apart from that, A.T.'s only significant personal contacts were with Brown, the other women with Brown, and customers. On November 4, 2011, A.T. was arrested in Indianapolis, Indiana for prostitution, and a material witness warrant was lodged against her. She has remained separated from Brown since that date.

**D. Brown's Use of Force and Threats of Force**

Approximately a month after starting work for the defendant, Brown began using force and threats of force as a means of controlling A.T. and causing her to continue to engage in commercial sex acts for him. A.T. would testify that the use of force and threats of force took place on nearly a daily basis, and that she engaged

in much of the commercial sex for Brown in which she engaged because of the force and threats of force. A.T. would also testify that she witnessed force against others, and Brown would also use force against Shannon Burney as an example to the other women. While it is impractical to catalog each use of force in this factual basis, two of the more extreme episodes are detailed below. A.T. would testify about many more.

The first example is from Jacksonville, Florida on November 8, 2010. Prior to this date, A.T., B.L., Shannon Burney, and Brown were in Jacksonville, Florida to engage in commercial sex. Brown and Burney were staying at the La Quinta Inn, 4686 Lenoir Avenue, Jacksonville, Florida 32216, and A.T. and B.L. were staying at an adjacent Red Roof Inn, 6969 Lenoir Avenue, Jacksonville, Florida 32216. Each hotel room was obtained in Shannon Burney's name.

Evidence that A.T. and B.L. were engaging in commercial sex acts for Brown would include the anticipated testimony of A.T., B.L. and Shannon Burney, copies of Backpage.com internet ads placed by Shannon Burney on October 19, 2010, October 20, 2010, October 27, 2010, and November 9, 2010 under the Jacksonville category of Backpage.com titled "adult entertainment>adult escorts," and downloaded information from A.T.'s cellular telephone containing some of the Jacksonville customers with whom she performed commercial sex acts.

While in Jacksonville and during a period on November 8, 2010, when they were not with customers, A.T. and B.L. were speaking in their Red Roof Hotel

room. A.T. assumed the conversation was private, but B.L. had inadvertently touched a key on her cell phone that caused the phone to dial the defendant's number. As a result, Brown was able to listen in on what A.B. and B.L. were saying. During the conversation, A.T. spoke in a derogatory fashion about some of Brown's children and then advised B.L. that she was going to leave Brown. This angered Brown, and he proceeded to the adjacent hotel, entered A.T. and B.L.'s room, walked across the room, and struck A.T. in the face with his hand.

The force used by Brown was sufficient to break A.T.'s nose and cause significant bleeding. The injury was of such severity that Brown decided to transport A.T. to the hospital and advised A.T. to tell the doctors that she injured her nose while playing basketball. Upon reaching St. Luke's Hospital in Jacksonville, Brown permitted A.T. to exit his vehicle and left her at the hospital. He did not enter. A.T. then received treatment. Medical records from St. Luke's Hospital confirm (a) that A.T. sustained a broken nose and (b) that A.T. advised the treating medical personnel that she sustained the injury while playing basketball.

After receiving treatment, A.T. contacted Brown, who informed her that a new customer had called. A.T. will testify that she then was required to engage in a commercial sex act, even though she had just been treated for a broken nose.

Shortly before the group had arrived in Jacksonville, A.T.'s mother had made contact with Orlando law enforcement authorities and advised them that Brown was holding A.T. against her will and forcing her to be a prostitute. Orlando

authorities were able to determine that A.T. was present in Jacksonville, and on November 9, 2010, Special Agent Eileen Jacob and other investigators made contact with A.T., B.L., Shannon Burney, and the defendant during a traffic stop. A.T. was apprehended on an outstanding warrant from Orlando. At the time, A.T. had an extremely swollen nose and a visible black eye from the force Brown had used against her. These injuries were documented by photograph. Brown was jailed for a night for driving without a license.

The next day, November 10, 2010, Brown, Shannon Burney, and B.L. left the Jacksonville area. After they left the Red Roof Inn, the FBI processed the hotel room where A.T. and B.L. had been staying. Multiple stains were present that appeared to be blood. Samples were taken, and an FBI DNA analyst has compared the DNA profiles from these samples to A.T.'s DNA profile and determined that a forensic match exists.

The second example of Brown's use of force took place in connection with sex trafficking activities in New Jersey. Backpage advertisement records show that Brown caused Backpage ads to be placed in Jersey Shore and North Jersey, New Jersey between January 12, 2011, and January 26, 2011, and in the Baltimore area of Maryland between January 27, 2011, and January 29, 2011.

A.T. will testify that while she was in New Jersey, she was performing commercial sex acts for Brown. On one occasion, she provided her telephone number to a customer. When she was back in the group's New Jersey hotel room,

the customer phoned her, and Brown was present when the call took place. Brown accused A.T. of speaking with another pimp, and A.T. told Brown that the man was a customer. Brown did not believe A.T. and made her strip naked and lie on the bed. Brown then retrieved a telephone cord, and he proceeded to whip her exposed buttocks repeatedly as a punishment for speaking to another pimp.[1] The next day, A.T. convinced Brown that it was a customer, not another pimp. Brown responded by telling A.T. that she deserved the whipping anyway.

When the group reached Maryland, A.T. had another one of the women photograph her injuries, and A.T. then sent her mother a digital photograph of these injuries. A.T.'s mother then forwarded this photograph to Special Agent Eileen Jacob. Digital information or tags contained in this photograph shows that the photograph was created with an I-phone 4 on January 28, 2011 at 11:53 p.m. The digital lattitude and longitude information on the photograph trace to a Days Inn and Suites Hotel located in Laurel, Maryland.

The photograph itself depicts A.T.'s exposed buttocks. No less than 28 linear bruises consistent with being whipped are visible on A.T.'s exposed buttocks. A.T. would testify that she had the other woman take the photograph and send it to

[1]Other women will testify that Brown used telephone cords to whip them as well. For example, a woman whose initials are M.G. spoke with Ontario, California police on May 8, 2005 (nearly 5 years before A.T. ever met Brown), and advised that she worked as a prostitute for Brown, and he used to use phone cords to whip her as well.

her mother so because she was fearful of Brown and wanted to document what Brown was doing to her.